**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| THE ESTATE OF BARRY ISOM, by and through its Executrix, Mary Love-Isom; Jaime Isom Newberry and Kimberly Isom Grindstaff,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. 2:14-cv-00475-RFB-VCF<br><br>**ORDER**<br><br>**Findings of Fact and Conclusions of Law After Court Trial** |

**I.  INTRODUCTION**

This case involves an automobile accident that caused the death of the Plaintiff, Barry Isom ("Isom"). The decedent's family seeks damages for negligence and wrongful death. The Court held a bench trial in this case from September 11, 2017 to September 22, 2017. The Court rules in favor of the Plaintiffs based on the following findings of fact and conclusions of law.

**II.  BACKGROUND**

The parties agree that on April 9, 2012, Vanessa Van Zerr ("Van Zerr"), an employee of the United States Geological Survey ("USGS") at the time, was driving a 2011 silver Chevrolet Tahoe ("Tahoe") northbound on US 93 to track desert tortoises in the Coyote Springs area. Isom was riding his 2002 Harley Davidson motorcycle northbound on US 93 at the same time. Isom's motorcycle collided with the Tahoe on US 93 after Van Zerr attempted to make a left turn across the southbound lane of US 93. Isom struck the right rear of the Tahoe and was ejected from his motorcycle. Isom subsequently died from his injuries.

The parties disagree as to whether Van Zerr was negligent, whether Isom was contributorily negligent, whether Isom was conscious after impact for any amount of time, and the appropriate amount of damages.

### III.	JURISDICTION AND VENUE

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 for claims arising under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Venue is proper because the underlying actions and corresponding damages occurred within Clark County, Nevada.

### IV.	FINDINGS OF FACT

Federal Rule of Civil Procedure 52(a)(1) requires the Court to "find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). The court must state findings sufficient to indicate the factual basis for its ultimate conclusion. <u>Kelley v. Everglades Drainage District</u>, 319 U.S. 415, 422 (1943). The findings must be "explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." <u>United States v. Alpine Land & Reservoir Co.</u>, 697 F.2d 851, 856 (9th Cir.), cert. denied, 464 U.S. 863 (1983) (citations omitted). Accordingly, following the bench trial and having reviewed all of the evidence and observed all of the witnesses, the Court makes the following findings of fact in this case.

1. On April 9, 2012, Vanessa Van Zerr ("Van Zerr"), an employee of the United States Geological Survey ("USGS") at the time, was driving a 2011 silver Chevrolet Tahoe ("Tahoe"), USGS vehicle, northbound on US 93 to track desert tortoises in the Coyote Springs area.
2. Irini (Renee) Lamkin ("Lamkin"), USGS intern at the time, was sitting in the front passenger seat of the Tahoe. Nelson Lau ("Lau"), USGS intern at the time, was sitting in the right rear passenger seat of the Tahoe.
3. Isom was riding his 2002 Harley Davidson motorcycle northbound on US 93 at the same time.  He was riding in the northbound land far behind the Tahoe.

4. As Van Zerr approached the dirt access road to the field site, she pulled off to the right on the shoulder to allow traffic immediately behind her to pass. The area where she pulled over was not a designated area for highway traffic to pull over and there was no lane or paved asphalt where she pulled over.

5. Van Zerr pulled the Tahoe completely off of the road while waiting for traffic to pass, with all four wheels on the sloped partially dirt and gravel shoulder. Van Zerr's vision was impaired by the angle of the vehicle in this position.

6. Van Zerr observed Isom approaching in the distance on his motorcycle, but failed to properly account for his distance and the speed at which he was approaching. She knew the speed limit for the highway was between 60 and 70 miles per hour. She reentered the highway without letting Isom pass, although she did not have sufficient time to do so.

7. Van Zerr reentered the highway at an unreasonably slow speed, approximately ten miles per hour. She did not put on her indicator signal to reenter the highway, so Isom did not have notice that the Tahoe was about to reenter the highway until it actually did so.

8. Approximately 20 feet after reentering the northbound lane of the road, Van Zerr began to maneuver the Tahoe to execute a left turn, but she did not make a direct or sharp turn. Rather than making a sharp, 90-degree turn across the southbound lane, Van Zerr first maneuvered the Tahoe from the northbound to the southbound lane at a slight angle, such that the rear right side of the Tahoe was exposed to northbound traffic, a few feet into the southbound lane, when Isom's motorcycle collided with the Tahoe.

9. Because of the speed and angle at which Van Zerr executed the left turn, Isom initially did not realize that the Tahoe intended to move into and then turn all the way across the southbound lane. Isom angled his motorcycle into the southbound lane because he intended to pass the Tahoe on the left side rather than risk a sudden brake while traveling at highway speed.

10. Van Zerr did not provide at least 300 feet of continual notice of her intent to execute a left turn before she turned left across highway US 93 in front of Isom and she was driving at an unsafely slow speed on the highway.

11. Van Zerr maneuvered the Tahoe into the southbound lane without activating her turn signal to indicate her intention to turn and without initially beginning her turn. By the time the Tahoe was completely pulled into the southbound lane, Isom did not have time to safely readjust his course.

12. Through no fault of his own, Isom struck the rear right side of the Tahoe and was ejected from his motorcycle. He landed on the road several feet from the site of the collision.

13. Isom suffered severe head trauma and bodily injuries as a result of the collision. He was bleeding from his head injuries in his helmet and his body appeared immobile.

14. Isom was conscious, but unable to communicate, for a brief but significant period of time after impact, approximately 20 – 35 minutes, until he lost consciousness and then ultimately expired from his injuries. During the period of consciousness, Isom would have been aware of the seriousness of his injuries and his impending death creating significant pain and suffering for the last moments of his life.

15. Based on the testimony of experts and all other evidence received, Isom had an additional life expectancy of approximately 8 to 10 years. While Isom had health issues that could impact his life expectancy, the Court finds this to be a reasonably accurate determination of the additional life expectancy.

16. Mary Love-Isom met the decedent in 2004. After dating for eighteen months, the two were married in 2006. They had a strong relationship and spent a considerable amount of time together during their six-year marriage, including going on trips together, enjoying mutual hobbies, and tending to their financial needs and family obligations.

17. Jaimee Isom Newberry and Kimberlee Isom Grindstaff were the decedent's daughters. Jaimee Isom Newberry is forty-two years old and Kimberlee Isom Grindstaff is thirty-eight years old. The decedent had ongoing and deep relationships with both of his daughters and continued to provide them with support both in person and through communication until the day of his death. He provided significant emotional and other support to his daughters who had both recently experienced significant personal challenges. Jaimee Isom Newberry went through a divorce from 2009-2010, during

which time her father provided her with a great deal of comfort, and Kimberlee Isom Grindstaff was in the process of going through a divorce when her father passed. Both of the decedent's daughters have children the decedent had relationships with as well and who no longer have a grandfather.

## V. CONCLUSIONS OF LAW

### A. Negligence

In Nevada, "to prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc., 221 P.3d 1276, 1280 (Nev. 2009). Negligence *per se* establishes the duty and breach elements of a negligence claim, "if the injured party belongs to the class of persons that the statute was intended to protect, and the injury is of the *type* against which the statute was intended to protect." Ashwood v. Clark County, 930 P.2d 740, 743-44 (Nev. 1997) (internal citation omitted) (emphasis in original). There are two Nevada traffic statutes applicable to this case. "A driver shall not turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety, and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement and after giving an appropriate signal if any other vehicle may be affected by such movement." NRS 484B.413(1). "A signal of intention to turn right or left, or otherwise turn a vehicle from a direct course, shall be given continuously during not less than the last 100 feet traveled in a business or residential district and not less than the last 300 feet traveled in any other area prior to changing the course of a vehicle. This rule shall be observed, regardless of the weather." NRS 484B.413(2).

The Court finds that Van Zerr violated both of these two traffic statutes. Van Zerr turned her vehicle from a direct course upon the highway at a time when the movement could not be made with reasonable safety and without giving an appropriate signal. Van Zerr did not signal her intention to turn left for 300 continuous feet before turning across the highway. As a fellow motorist traveling on the same highway, Isom was in the class of persons these statutes were

intended to protect. Isom's injuries and death were directly caused by his impact with the Tahoe in the course of the unsafe turn and these injuries and death are the type of injury the statutes are intended to prevent. Van Zerr was not excused from following these traffic laws, as it was not reasonable or safe for her to violate them in this context. Isom did not engage in any conduct that contributed to the accident. Therefore, the Court finds that Plaintiffs have established negligence per se and the elements of duty and breach.

Plaintiffs contend that Van Zerr also violated the requirement that "[t]he driver of a vehicle about to enter or exit a controlled-access highway shall yield the right-of-way to all vehicles approaching on the highway whose proximity constitutes an immediate hazard and shall continue to yield the right-of-way to that traffic until the driver may proceed with reasonable safety." NRS 484B.263. Based on the evidence, the Court does not find that the stretch of US 93 where the accident occurred is a controlled-access highway, and so this statute does not apply. However, the Court finds that Van Zerr nonetheless owed a duty of care to the other motorists on the highway to reenter the highway safely, and she breached that duty of care. Van Zerr acted negligently when she failed to wait until there was a safe distance between the Tahoe and the following traffic before reentering the highway. She was also negligent in executing the left turn in the manner in which she did. She entered the highway at an unsafely slow speed and then did not provide an indication of her intent to turn or execute the turn in a safe manner. Her actions prevented Isom from being able to safely maneuver his vehicle around the Tahoe.

The Court further finds that Van Zerr's negligent actions were the cause-in-fact and proximate cause of Isom's injuries and death, as the impact between the motorcycle and the Tahoe was a foreseeable result of Van Zerr's negligent driving.

### B. Wrongful Death

Under Nevada law, "[w]hen the death of any person... is caused by the wrongful act or neglect of another, the heirs of the decedent and the personal representatives of the decedent may each maintain an action for damages against the person who caused the death ..." NRS 41.085(2). Heirs in a wrongful death suit are entitled to recover "pecuniary damages for the person's grief

or sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering or disfigurement of the decedent." NRS 41.085(4). The personal representative of the decedent's estate is entitled to recover special damages, including funeral expenses. NRS 41.085(5)(a). As stated above, the Court finds that Van Zerr's negligent conduct caused Isom's death. The Plaintiffs in this case are the heirs and personal representative of the decedent. As such, they are entitled to recover under the Nevada wrongful death statute.

### C. Federal Tort Claims Act

Under the Federal Tort Claims Act ("FTCA"), the United States shall be liable for money damages "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (2010). When a government employee acting in the scope and course of her employment causes the death of another through her negligence, wrongful acts or omissions, the United States is liable therefor. 28 U.S.C. § 1346(b). The Court finds that Van Zerr was acting in the scope of her employment with the USGA when her negligence caused Isom's death. She was performing work for the USGS in a USGS vehicle. Therefore, the United States shall be liable for the damages accrued in this case under Nevada law.

### D. Damages
#### i. Loss of Support

Under the Nevada wrongful death statute, the decedent's heirs are entitled to recover damages for "loss of probable support." NRS 41.085(4). "This element of damages translates into, and is often measured by, the decedent's lost economic opportunity." Alsenz v. Clark Cty. Sch. Dist., 864 P.2d 285, 287 (1993). The Court finds that Isom's additional life expectancy was 8 to 10 years. This finding is based upon the Court's review of the various experts' reports and the Court's assessment of the credibility of their findings. These experts recognized that there was and could be a range of years for life expectancy for Isom, considering various individual facts about his health and lifestyle. The Court further finds that Plaintiffs are entitled to $345,00 total in economic damages for loss of probable support based on this life expectancy and Isom's

earning potential. This calculation is based upon a review of the experts' various economic projections and factoring in the Court's determination of which of the factors presented by the experts were more persuasive and thorough.

### ii. Loss of Companionship

Under the Nevada wrongful death statute, the decedent's heirs are entitled to recover damages for their "grief or sorrow" and for the loss of "companionship, society, comfort and consortium." NRS 41.085(4). The Court received significant and compelling testimony about Isom's involvement in the life of his family. The Court finds that he represented a significant and ongoing source of emotional and other support for his family, especially his two daughters. The Court further finds that he continued to provide significant and ongoing support to his family up to the moment of his death. To an extraordinary degree beyond simply being a father and husband, he was an unusually central emotional support figure in his family. Based on the testimony of the Plaintiffs at trial and the significant hardship this loss has caused them, the Court will award them non-economic damages as follows: Mary Love-Isom – $550,000; Jaimee Isom Newberry – $650,000; Kimberlee Isom Grindstaff – $650,000.

### iii. Pain and Suffering

Under the Nevada wrongful death statute, the decedent's heirs are entitled to recover "damages for pain, suffering or disfigurement of the decedent." NRS 41.085(4). In order to recover damages for pain and suffering, the beneficiary must show by a preponderance of the evidence "that the decedent was conscious for at least some period of time after he suffered the injuries which resulted in his death." F/V Carolyn Jean, Inc. v. Schmitt, 73 F.3d 884, 885 (9th Cir. 1995) (quoting Cook v. Ross Island Sand & Gravel Co., 626 F.2d 746, 749-50 (9th Cir. 1980). The Court finds that Isom was conscious, although unable to verbally communicate, for a brief period of time after the accident, before his injuries rendered him unconscious. Importantly, during the period of time that he was conscious, the Court finds that he would have been aware of the extent and severity of his injuries and his impending death. The Court finds that he would have suffered significant pain and suffering in these last moments of his life – both physical and emotional. Therefore, the Court finds it appropriate to award damages for pain and

suffering as follows: Mary Love-Isom - $250,000; Jaimee Isom Newberry - $250,000; Kimberlee Isom Granstaff - $250,000.

### iv. Special Damages

Under the Nevada Wrongful Death Statute, the representative of a decedent's estate may recover "[a]ny special damages, such as medical expenses, which the decedent incurred or sustained before the decedent's death, and funeral expenses." NRS 41.085(5)(a). As the representative of the decedent's estate, Mary Love-Isom is entitled to special damages for funeral expenses and property damage in the amount of $10,045 - on behalf of the decedent's estate.

## VI. JUDGMENT

The Court finds in favor of the Plaintiffs. The Court awards the Plaintiffs $345,000 total in economic damages for loss of probable support. The Court awards non-economic damages for loss of companionship as follows: Mary Love-Isom – $550,000; Jaimee Isom Newberry – $650,000; Kimberlee Isom Grindstaff – $650,000. The Court awards the Plaintiffs non-economic damages for pain and suffering as follows: Mary Love-Isom – $250,000; Jaimee Isom Newberry – $250,000; Kimberlee Isom Grindstaff – $250,000. As the representative of the decedent's estate, the Court awards Mary Love-Isom $10,045 in special damages for funeral expenses and property damage, on behalf of the decedent's estate.

**IT IS ORDERED** that the Clerk of Court shall enter judgment for the Plaintiffs and close this case.

**IT IS FURTHER ORDERED** that Motions [111, 130, 133 and 140] are GRANTED and Motion [136] is DENIED as moot given the Court's rulings at the trial.

DATED this 31st day of December, 2017.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**